corporation in the receipt of the proceeds of the sales of the tickets, but received them to his own use, as the purchaser of the whole lottery, the corporation cannot be considered, in law, as having received them. We do not think it necessary to say more upon the construction of the ticket, than that it does not import an express undertaking, by the corporation, to pay or to guarantee the payment of the prizes. Upon the whole, the court is of opinion that the plaintiff's evidence is admissible, notwithstanding the defendants' evidence; but that if the jury should find that the evidence so offered as aforesaid on the part of the defendants is genuine and true as stated, and that the lottery ticket, in the declaration mentioned and offered in evidence as aforesaid, was sold to the plaintiff, by the said Gillespie as the purchaser of the said lottery, and for his own account and risk, the evidence so offered on the part of the plaintiff is not sufficient to charge the defendants in this action.

THE COURT refused to instruct the jury, as prayed by Mr. Jones, that, upon the whole evidence in the cause, the plaintiff was not entitled to recover; but, upon the further prayer of Mr. Jones, instructed the jury, in substance, that if they should find, from the evidence, that the lottery was sold to Gillespie, (as stated in the testimony of Mr. Webb,) and that he sold his ticket to the plaintiff, and received the purchase-money therefor, and for all the other tickets in the said lottery, to his own use and benefit, then the plaintiff cannot recover upon the said evidence.

Verdict for plaintiff, $35,000, and interest from 17th March, 1823.

The defendants moved for a new trial, which THE COURT granted. And at April term, 1825, a case was agreed, upon which THE COURT rendered judgment for the defendants, which was reversed by the supreme court. 12 Wheat. [25 U. S.] 40.

[NOTE. Complainant brought error, and the supreme court reversed the judgment and remanded the cause, with directions to enter judgment for the plaintiff.
[The charter of the corporation required that the lotteries authorized by it should be drawn under its superintendence and on its own account. The contract with Gillespie was no more than a sale of the profits of the lottery, and did not, under the circumstances of the case, relieve the corporation from responsibility. The ticket, having been satisfactorily proved to have been issued and sold under authority of the corporation, was properly admissible in evidence, and amounted in fact to the promise of the corporation, made by its authorized agent, to pay the prize. (Synopsis of opinion by Chief Justice Marshall.) Clark v. Mayor, 12 Wheat. (25 U. S.) 40.]

## Case No. 2,840.
### CLARK v. WILSON.
[Nowhere reported; opinion not now accessible. See next following case, No. 2,841.]

## Case No. 2,841.
### CLARK v. WILSON.
[3 Wash. C. C. 560.][1]
Circuit Court, E. D. Pennsylvania. Oct. Term, 1819.

FOREIGN ATTACHMENT—PARTIES—FORMER ATTACHMENT.

1. Motion to dissolve a foreign attachment. The cause of action stated in the affidavit, which was made by one Smith, as the agent of the plaintiff's testator, was the non-performance, by the defendant, of the stipulations in a charter party, made with the plaintiff's testator, the owner of a ship; the defendant having refused and wholly renounced the employment of the ship on the voyage described in the contract; by which damages were sustained to a large amount. The amount of the plaintiff's claim cannot with propriety be averred or sworn to; and being entirely for unliquidated damages, to determine which no known standard can be referred to, a foreign attachment cannot be sustained.

2. The charter party having been entered into by Smith and the defendant, although in the body of it he states himself the agent of Clark, yet, as all the covenants are made with Smith, and he executed the instrument in his own name, without reference to Clark, the action cannot be sustained in the name of Clark.

3. It is no objection to a foreign attachment, that the plaintiff had sued out an attachment, in another state, for the same cause of action.

4. Quere. If the defendant had given bail in the first attachment, whether a second could be sustained.

This was a rule upon the plaintiff [Clark's executor] to show his cause of action, and why the foreign attachment, which had been issued, should not be dissolved. The plaintiff showed cause, by producing the affidavit of John E. Smith, in which he swears; that, on the 31st August, 1805, a covenant was entered into between the defendant and the deponent as agent of James Clark, the testator, at London, a copy of which is annexed to the affidavit; and that, in pursuance thereof, the ship Portsmouth, therein named, took on board, at Portsmouth, from the defendant, such lawful goods as the defendant thought proper to ship, and proceeded on her voyage for Montevideo, and touched, agreeably to said covenant, at the coast of Africa, for passengers for Montevideo; and, on her voyage thence, the ship, before her arrival at Montevideo, was, without any fault of the owner or his agents, seized on the coast of Africa and sent to London, where she was detained for a long time, and then liberated, and restored to the deponent, as agent of Clark. That, with all possible despatch, he caused the said ship to be repaired, and then proposed to the defendant to cause the said ship to prosecute and complete the aforesaid voyage, and to do and perform every thing incumbent on him to do by the terms of the

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]